UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Associated Builders and Contractors, Inc., Minnesota/North Dakota Chapter; and Laketown Electric Corp., | Civil No. 19-CV-00656 (DWF/BRT) |
| Plaintiffs, | |
| v. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| Minneapolis Public Schools, Special School District No. 1; and Nelson Inz, in his official capacity as Chairperson of the Minneapolis Board of Education, | |
| Defendants, | |
| and | |
| Minneapolis Building and Construction Trades Council, | |
| Defendant-Intervenor. | |

---

In 1959 Congress amended the National Labor Relations Act specifically to allow the use of project labor agreements (PLA) in the construction industry. Since that time, PLAs have been widely used in both public and private construction, including federal hydroelectric dams, the Trans–Alaska Pipeline, and myriad projects in Minnesota. *See Henry H. Perritt, Jr., Keeping the Government Out of the Way: Project Labor Agreements Under the Supreme Court's Boston Harbor Decision*, 12 Lab. Law. 69, 69–70 (1996). The Supreme Court, in rejecting a challenge to PLAs, has also unanimously endorsed them as an effective tool for public owner-developers in dealing with economic conditions in the

construction industry. *Building and Constr. Trades Council v. Associated Builders and Contractors of Mass./R.I., Inc.* ["*Boston Harbor*"], 507 U.S. 218, 230–33 (1993). And numerous federal courts – including the Eighth Circuit Court of Appeals – have routinely rejected First and Fourteenth Amendment challenges to the use of PLAs. *E.g. Higgins Elec., Inc. v. O'Fallon Fire Protection Dist.*, 813 F.3d 1124 (8th Cir. 2016).

Against this backdrop, Plaintiffs nevertheless urge the Court to extinguish the Minneapolis Public Schools' ("MPS") longstanding use of a PLA that was executed in order to achieve "expeditious and efficient" completion of construction projects for the benefit of the public. (ECF Doc. 1-1 at p. 35.) More specifically, Plaintiffs invite the Court to declare that the hiring procedures and employee benefit provisions of the PLA violate the Constitution.

This is an invitation the Court should decline.

First, the Complaint fails to present the Court with a justiciable controversy because the Plaintiffs' alleged injuries are merely speculative and hypothetical. For this reason, the Court should dismiss the Complaint without further inquiry. But even if the Court were to consider the merits of Plaintiffs' Complaint, dismissal is still appropriate because the challenged elements of the PLA do not violate the Constitution.

## BACKGROUND FACTS

Defendant-Intervenor Minneapolis Building and Construction Trades Council's memorandum of law (ECF Doc. 32) contains a thorough recitation of the relevant facts. Defendants need not repeat those facts here, and instead incorporate them by reference.

## **STANDARD OF LAW**

A complaint must be dismissed under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level..." *Id*.

While a court generally accepts all facts alleged in the complaint to be true, a court need not accept wholly conclusory allegations and legal arguments. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, U.S. 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not pass muster." *Doe v. St. John's Univ*., No. 17-2413, 2017 WL 4863066, at *3 (D. Minn. Oct. 26, 2017).

It is well-established that in addition to the complaint itself, a court may also consider "matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." *Weller v. Time Ins. Co.*, No. 08-416, 2008 WL 2952033, at *2 (D. Minn. July 28, 2008) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

## **ARGUMENT**

### I. PLAINTIFFS' COMPLAINT FAILS TO PRESENT A JUSTICIABLE CLAIM.

Plaintiffs' Complaint fails to state a claim upon which relief can be granted because they do not present a justiciable controversy to the Court. With respect to Plaintiffs' claims for declaratory relief, the Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2018). A claim under the Declaratory Judgment Act must satisfy the case-or-controversy requirement under Article III of United States Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); *Marine Equipment Mgt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993) ("The case or controversy requirement of Article III applies with equal force to declaratory judgment as it does to actions seeking traditional coercive relief.").

To do so, the alleged dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests"; "real and substantial"; and seeking "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna*, 300 U.S. at 240–241. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).

4

Setting aside Plaintiffs' request for declaratory relief, they must also establish standing to prosecute their constitutional claims under §1983. *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 10 (2004). The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. *Id*. The party invoking federal jurisdiction has the burden of establishing that they have standing to assert the claim. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). Standing consists of three elements: 1) that plaintiff must have suffered an injury in fact; 2) there must be a causal connection between that injury and the conduct complained of; and 3) it must be likely that the injury would be redressed by a remedy the court could order. *Id.*

Here, Plaintiffs fail to satisfy the case-and-controversy requirements of Article III for two reasons: 1) they have not properly alleged an injury in fact; and 2) they are seeking an advisory opinion from the Court.

### A.     Plaintiffs have not properly alleged an injury in fact.

The first reason Plaintiffs lack standing is because they have not sufficiently pleaded an injury in fact. It is not enough to allege an unspecific threat of an injury. *Id.*; *ARRM v. Piper*, 367 F. Supp. 3d 944, 951 (D. Minn. 2019) ("Allegations of a possible future injury are insufficient to confer standing."). Nor can a plaintiff establish standing through pleading a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Instead, an injury in fact "must be concrete, particularized, and actual or imminent." *Id.* at 409 (quotations omitted). Notably, "[t]he purpose of the imminence

5

requirement is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *ARRM*, 367 F. Supp. 3d at 951.

The Supreme Court's decision in *Clapper v. Amnesty International USA* is instructive. *See* 568 U.S. 398 (2013). There, a group of human-rights, labor, media, and legal organizations challenged the constitutionality of the Foreign Intelligence Surveillance Act ("FISA"). *Clapper*, 568 U.S. at 406-07. Specifically, they argued that certain amendments to FISA passed in 2008 were jeopardizing their abilities to engage in and maintain confidential communications. *Id.* at 406–07. They alleged that some of their clients were likely targets for surveillance under the new FISA surveillance amendments. *Id.* at 406. They further claimed that their ability to "locate witnesses, cultivate sources, obtain information, and communicate confidential[ly]" with their clients was compromised by the increased surveillance powers under the FISA amendments. *Id.* As a result, the plaintiffs claimed that they ceased certain telephone and email communications and may be forced to travel internationally to have communication in person to avoid the surveillance. *Id.* at 407.

Plaintiffs filed a declaratory judgment action seeking a determination that the FISA amendments were unconstitutional on their face. *Id.* The district court determined that the plaintiffs lacked standing, but the Second Circuit reversed. *Id.* The Supreme Court agreed with the district court and reversed the Second Circuit. *Id.* at 408.

The Supreme Court noted that the plaintiffs' theory of standing rested on a "highly attenuated chain of possibilities." *Id.* at 410. As an example, the Supreme Court highlighted that plaintiffs had not even alleged that the government had sought to surveil

6

their communications under the FISA amendments. *Id.* at 411. The Supreme Court further observed that plaintiffs were simply speculating that the government would use its newly authorized surveillance powers, that a court would sign a warrant to this effect, and that their communications would be intercepted as part of this surveillance. *Id.* at 412–14. The Supreme Court concluded that, "In sum, [plaintiffs'] speculative chain of possibilities does not establish that injury based on potential future surveillance is certainly impending or is fairly traceable" to the new FISA amendments. *Id.* at 414.

    The same holds true in this case. Plaintiffs have not alleged an actual injury in fact but, rather, an attenuated chain of events that *may* lead to an injury in fact. Plaintiffs allege that they must agree to terms of the PLA in order to submit a bid—not that they have actually submitted a bid. Plaintiffs allege that agreeing to the PLA *may* result in certain harms if their bids are selected—not that certain harms have actually occurred as a result of their bids being selected. Plaintiffs allege that one potential harm is that a hiring hall *may* require them to hire additional employees to work on a project—not that they have actually been required to hire additional employees to work on a project. Plaintiffs allege that another potential harm is contributing to an employee-benefits fund that *may* not benefit their employees—not that they have actually contributed to an employee-benefits fund that did not benefit their employees. And Plaintiffs allege that they *may* suffer financial penalties and reputational damage if they renege on a submitted bid—not that they have actually suffered financial penalties or reputational damage as a result of reneging on a bid.

7

Indeed, Plaintiffs have not even alleged that they have taken the first step—submitting a bid—required to start this supposed parade of horribles. These allegations are equally conditional and conclusory and insufficient to confer standing to the Court to adjudicate this hypothetical dispute. Because Plaintiffs have failed to sufficiently plead an injury in fact, the Court should dismiss their complaint in its entirety.

### B. Plaintiffs are seeking an advisory opinion from the Court.

Relatedly, Plaintiffs' claim to satisfy the case-in-controversy requirement because their complaint seeks an advisory opinion. When a court is called upon to issue an advisory opinion, the case-or-controversy requirement of Article III is not met. *Aetna*, 300 U.S. at 241. "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* As the Eighth Circuit has observed:

> The refusal to give advisory opinions must be based on "the implicit policies embodied in Article III, and not history alone. It recognizes the risk that comes from passing on abstract questions rather than limiting decisions to concrete cases in which a question is precisely framed by a clash of genuine adversary argument exploring every aspect of the issue.

*Cass Cty. v. United States*, 570 F.2d 737, 741 (8th Cir. 1978) (quotations omitted). Significantly, "federal courts will not render advisory opinions even in actions seeking declaratory judgments." *Id.* at 740.

The entirety of Plaintiffs' complaint rests on a series of hypotheticals. Plaintiffs do not allege that they have submitted a bid for an MPS project. Nor do they allege a specific project at issue in their complaint. Rather, Plaintiffs allege that they have not submitted a bid because they are required to consent to the PLA in order to do so. They further allege

8

that consenting to the PLA will require them to work with unspecified hiring halls. Plaintiffs then allege that the unspecified hiring halls may require them to hire additional employees for these unspecified projects. Additionally, Plaintiffs allege that some of these unspecified new employees for these unspecified projects may belong to unspecified unions. If the unspecified hiring halls require the hiring of unspecified union members for these unspecified projects, Plaintiffs allege that their constitution rights will be violated.

Similarly, Plaintiffs allege that PLA will require them to make contributions to an unspecified employee-benefit fund. If forced to contribute to an unspecified employee-benefit fund, Plaintiffs allege the possibility that these contributions may be used for unspecified lobbying or unspecified political advocacy. If the unspecified employee-benefit fund allocates Plaintiffs' contributions to unspecified lobbying or unspecified political advocacy, Plaintiffs again contend that their constitutional rights will be violated.

This is a classic example of an advisory opinion: The determination of a party's rights predicated on facts yet to come to fruition. For this second, independent reason, Plaintiffs cannot satisfy the cases-and-controversy requirement of Article III. The Court should dismiss their Complaint as a result.

## II. PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW.

The United States Constitution prohibits states from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. Equal protection prohibits governmentally-imposed classifications that impermissibly discriminate on the basis of certain class characteristics. Plaintiffs concede that "rational

9

basis" review applies to their claim, meaning the challenged action must be afforded extraordinary deference. (Complaint at p. 16.) The Court must therefore presume the PLA to be constitutional and Plaintiffs must demonstrate otherwise by negating "every conceivable basis which might support it." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

### A.  The PLA Does Not Discriminate Against Nonunion Contractors.

The PLA applies to all bidders in the same fashion – union and nonunion alike. While Plaintiffs may not like certain aspects of the PLA, those conceptual disagreements do not establish the requisite discriminatory predicate. Indeed, the hiring provisions and employee benefit provisions of the PLA apply equally to all potential bidders. Because the Complaint does not allege any actual discrimination, the Court should dismiss the equal protection claim. *See Laborers Local No. 942 v. Lampkin*, 956 P.2d 422, 436 (Alaska 1998) (holding that a PLA does not violate the equal protection rights of nonunion contractors).

### B.  Any Preference for Union Labor Would Survive Rational-Basis Review.

Even if the PLA did discriminate in favor of union labor, the Eighth Circuit has already held that such a preference satisfies rational-basis review. In *Hanten v. School Dist. of Riverview Gardens*, the court rejected various constitutional challenges to a PLA and stated: "We believe that when the government, acting like a private business, states a preference for union labor in construction bid specifications, such a preference is facially rational." 183 F.3d 799, 806 (8th Cir. 1999). The stated purposes of the PLA at issue here included providing for workplace harmony at construction sites, preventing work stoppages to ensure prompt and efficient completion of projects and "supply[ing]

10

substantial numbers of employees from construction and supporting crafts, possessing skills and qualifications that are vital to [the Project's] completion." (ECF Doc. 1-1 at pp. 35–36.) Numerous courts have held that accepting a PLA in order to meet these types of goals is rationally-related to a legitimate interest. *E.g. Minn. Chapter of Assoc. Builders and Contractors, Inc. v. Cty of St. Louis*, 825 F. Supp. 238, 244 (D. Minn. 1993) (denying TRO challenge to PLA and noting "legitimate interest in protecting against labor disruptions.") Accordingly, the Court should reject Plaintiffs' equal protection attack on the PLA and dismiss Count III of the Complaint.

### III. PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW BECAUSE THEY LACK A PROPERTY INTEREST.

In order to sustain a procedural due process claim under Count IV, Plaintiffs must show that the government deprived them of a protected property interest. *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000). State law determines the existence of a property interest. *Hanten*, 183 F.3d at 808.

Under Minnesota law, contractors must be the lowest responsible bidder on a project in order to have a protected property interest. *In re Admin. Reconsideration Hearing Request ex rel. Cent. Specialties, Inc*., No. A12-0024, 2012 WL 3641295, at *7 (Minn. Ct. App. Aug. 27, 2012) (rejecting a bidder's due-process claim when the bidder failed to establish that it was the lowest bidder conforming to contract specifications). This requirement is of course fatal to Plaintiffs' claim because Plaintiffs did not bid on any MPS project – let alone submit a bid conforming to the requirements of the PLA. For this reason, the Court should dismiss Plaintiffs' due process claim. See *Higgins Elec., Inc. v. O'Fallon*

11

*Fire Protection Dist.*, 813 F.3d 1124, 1130 (8th Cir. 2016) (dismissing due process claim for lack of property interest).

## IV. PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF LAW.

### A. The PLA's Hiring Provisions Do Not Violate Associational Rights.

In Count II of the Complaint, Plaintiffs contend that the PLA's hiring provisions force an unwanted association with unions upon nonunion contractors. As a threshold matter, Plaintiffs' claim fails because they have not explained how hiring employees from a hiring hall would impair any expressive association. Bare assertions that mere association with an organization would impair Plaintiffs' message are insufficient to demonstrate a constitutional violation. *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.* ["*FAIR*"], 547 U.S. 47, 69 (2006).

Courts have also consistently rejected claims that contract specifications somehow impose improper associations with labor organizations on nonunion contractors. For example, in holding that a PLA does not impinge on constitutional rights, the Iowa Supreme Court stated that while some organizations may be disinclined to bid or do work under the terms of a PLA, "the First Amendment does not oblige the government to minimize the financial repercussions of such a choice." *Master Builders of Iowa, Inc. v. Polk Cty.*, 653 N.W.2d 382, 399 (Ia. 2002).

The Eighth Circuit's decision in *Hanten* is particularly instructive. In that case, the complaint alleged a Missouri school district required that bidders on a construction job be

union affiliated, thereby excluding nonunion companies. 183 F.3d at 805–06. Affirming dismissal of the case for failure to state a claim, the court stated:

> Not every governmental practice that might conceivably impose upon the freedom to associate is actionable … The school district was entitled to engage in conduct that incidentally inhibits protected forms of association like nonunion membership so long as the conduct was rational and was related to a legitimate government purpose.

*Id.* at 805.

Here, the rationale of the PLA – prompt and economical public works – is exactly the same as in *Hanten*. *Id*. at 807. And the Eighth Circuit has recently affirmed *Hanten's* declaration that "a governmental preference for union labor in the construction industry ... does not directly or substantially interfere with the rights of laborers to refrain from joining a union." *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist*., 813 F.3d 1124, 1130 (8th Cir. 2016). Moreover, even if the PLA did impact Plaintiffs' freedom of association, it would still survive rational basis scrutiny because it is reasonably related to a legitimate governmental interest. *Supra* §II(B). Accordingly, the Court should dismiss Plaintiffs' association claim.

### B. Neither the Hiring Procedures Nor the Employee Benefit Provisions of the PLA Violate Freedom of Speech Under the First Amendment.

In Count I of the Complaint, Plaintiffs claim without explanation that the union hiring provision somehow constitutes viewpoint discrimination. This allegation does not pass muster under *Iqbal/Twombly* for several reasons. First, the PLA does not condition acceptance on a contractor's union or nonunion status. The PLA also does not require that any of a contractor's employees actually be union-affiliated. There are no allegations that

Plaintiffs have been unable to secure work under a PLA because of any union-related speech, or that they have been coerced or pressured to join a union. As in *Hanten*, on the face of the Complaint, "no inference can fairly be drawn that any of the plaintiffs were targeted by the defendants for their nonunion associations or views." 183 F.3d at 807. The Court should therefore dismiss Count I.

Plaintiffs' First Amendment claim in Count V is also fatally flawed and should be dismissed. Plaintiffs argue that required contributions to employee benefit trust funds indirectly support unions' political speech. But this argument is directly contrary to the terms of the PLA, which require all contributions to employee funds to accrue to the direct benefit of the employee – and not to a union or any ancillary union activity. (ECF Doc. 1-1 at p. 39.) Moreover, Plaintiffs do not explain how such contributions, which are made by employers, would "free up" money to be used for the benefit of a union. The Court should not accept such "wholly conclusory allegations and legal arguments." *See Hanten* at 805.

Plaintiffs will presumably contend that the Supreme Court's recent decision in *Janus v. AFSCME Council 31,* 138 S.Ct. 2448 (2018), enables their attack on the PLA's required benefit fund contributions. But *Janus* is inapposite. In that case, the Supreme Court struck down public-sector agency fees precisely because such fees required non-members to support union speech with which they disagreed. *Id*. at 2463-64, 2478. But here, the PLA's required contributions do not fund union speech or "political advocacy" as Plaintiffs allege, and by the terms of the PLA may only fund employee benefits that inure directly to the benefit of the employee. Moreover, *Janus* involved public-sector employees

14

and a government entity acting in a role as employer. Here, the employees are all private-sector, and MPS' role as property owner is that of a market participant. For these reasons, *Janus* simply does not save Plaintiffs' claim.

## CONCLUSION

Given Plaintiffs' lack of standing, the established use of PLAs in the construction industry, and the express endorsement of these agreements by Congress and the judiciary, the Court should dismiss Plaintiffs' Complaint with prejudice.

**BASSFORD REMELE**
*A Professional Association*

Dated: May 24, 2019

By: *s/Jonathan P. Norrie*
Jonathan P. Norrie (MN #347309)
J. Scott Andresen (MN #292953)
Daniel R. Olson (MN #389235)
Jessica L. Kometz (MN #399303)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
jnorrie@bassford.com
sandresen@bassford.com
dolson@bassford.com
jkometz@bassford.com

*Attorneys for Minneapolis Public Schools and Nelson Inz as Board Chair*