UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Associated Builders and Contractors, Inc., Minnesota/North Dakota Chapter; and Laketown Electric Corporation,

        Plaintiffs,

v.

Minneapolis Public Schools, Special School District No. 1; and Nelson Inz, in his official capacity as Chairperson of the Minneapolis Board of Education,

        Defendants,

and

Minneapolis Building and Construction Trades Council,

        Defendant-Intervenor.

Case File No.: 0:19-cv-00656 (DWF/BRT)

**REPLY MEMORANDUM OF LAW OF DEFENDANT-INTERVENOR MINNEAPOLIS BUILDING AND CONSTRUCTION TRADES COUNCIL IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**ORAL ARGUMENT REQUESTED**

---

## INTRODUCTION

Plaintiffs' attack on project labor agreements ("PLAs") is a case of old wine in new bottles, repackaging failed "discrimination" arguments as constitutional claims. The U.S. Supreme Court rejected the ABC's "discrimination" arguments in *Boston Harbor*, which dismissed a claim that a PLA was preempted by federal labor law. *See Building and Constr. Trades Council v. Associated Builders and Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 231-33 (1993). The Minnesota Court of Appeals rejected the same type of "discrimination" arguments the ABC makes here in denying an injunction against a PLA

1

under Minnesota's competitive bidding statute. *Queen City Constr., Inc. v. City of Rochester*, 604 N.W.2d 368, 376-77 (Minn. Ct. App. 1999). In those cases, the Courts recognized that PLAs are used for legitimate business reasons to make sure that projects are built on time and on budget and do not discriminate against non-union contractors or employees.

Further, the Eighth Circuit's decisions in *Hanten* and *Higgins* foreclose the ABC's effort to recast their objections to PLAs as constitutional claims in this case. Those Eighth Circuit decisions make clear that a School District's exercise of its business judgment to obtain a construction workforce through collectively bargained hiring procedures does not violate the First Amendment, Due Process Clause, or Equal Protection Clause. In addition, courts throughout the country have rejected similar constitutional claims against PLAs brought by the ABC and similar organizations.

Plaintiffs' efforts to supplement their deficient pleadings with declarations are improper at the Rule 12 stage, and, in any event, those declarations cannot save Plaintiffs' claims, which are barred by the governing case law. In addition, Plaintiffs lack standing to pursue their claims. Their argument that non-union contractors are somehow not on "equal footing" to bid for work under the PLA contradicts the PLA's plain language, the applicable case law, and the undisputed record that shows that non-union contractors regularly are awarded work under the PLA.

For these reasons, the Complaint should be dismissed in its entirety and with prejudice.

## ARGUMENT

### I. NON-UNION CONTRACTORS ARE ELIGIBLE TO WORK UNDER THE PLA WITHOUT BECOMING UNIONIZED AND THEIR EMPLOYEES ARE NOT REQUIRED TO BECOME UNION MEMBERS; THUS, THE PLA DOES NOT DISCRIMINATE AGAINST A "NON-UNION VIEWPOINT"

Plaintiffs argue that the PLA's hiring hall procedures are purportedly "facially discriminatory" against non-union contractors and employees. *Pl.Br. p.25*. This argument contradicts the PLA's plain language and applicable case law.

The PLA expressly states that bidding is open to any contractors that are willing to abide by the PLA regardless of whether they are unionized or not. *PLA, Art.II, Secs.1,4, incorporated in Compl. Ex.A, ECF Doc. 1-1, p.37*. In addition, the case law makes clear that under a PLA, "both union and non-union contractors may bid for contracts, but all successful bidders must agree to abide by the terms of the PLA during the project." *Queen City*, 604 N.W.2d at 371. "A non-union contractor can in fact win a contract on a project for which a PLA is in place." *Id.* at 376; *accord Associated Builders and Contractors, Inc. v. San Francisco Airports Com.*, 21 Cal.4th 352, 381-82 (Cal. 1999) ("the [PLA] excludes no contractor or employee; any contractor, whether union or nonunion, is free to bid on the project."); *Associated Bldrs. & Contrs. v. Jefferson Cty. Bd. Of Commrs.*, 665 N.E.2d 723, 726 (Ohio Ct. App. 1995) ("under the PLA, no individual or contractor is precluded from working on the project based upon their affiliation or nonaffiliation with a labor union.").

Exclusive hiring halls are *not* discriminatory against non-members and do not coerce membership. "Federal labor law requires union hiring halls to be

3

nondiscriminatory, that is, to refer both union and non-union personnel for jobs without discriminating on the basis of union membership." *Queen City*, 604 N.W.2d at 371 (citing NLRA provisions); *see also Int'l All. Of Theatrical Stage Emps., Local Union No. 151 v. NLRB*, 885 F.3d 1123, 1132 (8th Cir. 2018) ("It is well settled that "a union cannot operate a hiring hall to discriminate based on an employee's lack of union membership.").

In addition, Plaintiffs argue that the PLA supposedly "distributes benefits and burdens" to somehow disfavor a "non-union viewpoint." *Pl.Br. pp. 23,31*. In *Boston Harbor* the U.S. Supreme Court rejected the argument that a PLA improperly distributes incentives and burdens against non-union contractors and instead found that PLAs exemplify market forces:

> To the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a prehire agreement, a public entity *as purchaser* should be permitted to do the same. Confronted with such a purchaser, those contractors who do not normally enter such agreements are faced with a choice. They may alter their usual mode of operation to secure the business opportunity at hand, or seek business from purchasers whose perceived needs do not include a project labor agreement . . . When the [public agency], acting in the role of purchaser of construction services, acts just like a private contractor would act, and conditions its purchasing upon the very sort of labor agreement that Congress explicitly authorized and expected frequently to find, it does not 'regulate' the workings of the market forces that Congress expected to find; it exemplifies them.

507 U.S. at 231-33.

Other courts have applied a similar analysis in rejecting First Amendment challenges to PLAs. The Iowa Supreme Court explained:

4

> Contractor members of the appellant organizations may feel disinclined to bid or do work under the provisions of the PLA, but "the First Amendment does not oblige the government to minimize the financial repercussions of such a choice."

*Master Builders of Iowa, Inc. v. Polk County*, 653 N.W.2d 382, 399 (Ia. 2002) (emphasis added, internal citations omitted), *quoting Lyng v. UAW,* 485 U.S. 360, 368 (1988); *accord San Francisco Airports Com*., 21 Cal.4th at 380.

Relying on U.S. Supreme Court authority, the California Supreme Court has further elaborated:

> Even if we could conclude the [PLA] somehow burdens ABC's political views, we observe that the high court in *O'Hare* recognized: 'Cities and other governmental entities make a wide range of decisions in the course of contracting for goods and services. The Constitution accords government officials a large measure of freedom as they exercise the discretion inherent in making these decisions. . . A government official might offer a satisfactory justification, unrelated to the suppression of speech or associational rights, for either course of action.

*Id.* at 381, *citing O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 724-25 (1996). Thus, even if the PLA did have an incidental impact on Plaintiffs' expression of their anti-union philosophy—which is clearly not the case—the School District is free to exercise its discretion rationally to require a PLA to further its legitimate business interests that were recognized and approved in *Boston Harbor*, 507 U.S. at 231-33; *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 806-07 (8th Cir. 1999); *Minnesota Chapter of Associated Builders and Contractors, Inc. v. County of St. Louis*, 825 F.Supp. 238, 244 (D. Minn. 1993); and *Queen City*, 604 N.W.2d 378.

Plaintiffs' reliance on the *Elrod/Branti* line of political patronage cases is misplaced. In those cases, political affiliation was made a condition of employment. Here, union affiliation or "pro-union viewpoint" is not made a condition of working

5

under a PLA for the contractor or employee. Plaintiffs also strain to draw an analogy to consideration of race in college admissions. A better analogy would be to a requirement of agreeing to abide by certain minimum standards of conduct, like not cheating, as a condition of admission to college. Anyone can agree to the standards, and no one is excluded unless they are unwilling to agree to the standards.

Plaintiffs' "discrimination" argument is premised on multiple misrepresentations about the language of the collective bargaining agreement ("CBA") hiring procedures that are incorporated by reference in the PLA (and thus in the Complaint as well) and which Plaintiffs ignore. For example, Plaintiffs erroneously assert that "Contractors that are unsatisfied with the employees they obtain from the hiring hall must employ them anyway" and face "significant penalties" for backing out. *Pl.Br. p.9*. In fact, a majority of the CBA hiring procedures that are incorporated in the PLA do not require the contractor to hire from the Union at all, *see, e.g. McConnell Aff., Exs.1-12, ECF Doc. No. 33-2 through 33-13*, and the others allow the contractor to reject any applicant referred by the Union or to select which applicants they want to hire, *see, e.g. McConnell Aff., Exs.13-22*. Notably, the electrical workers' hiring procedures that would apply to Laketown both expressly state: "***The Employer shall have the right to reject any applicant for employment***." *Id., Ex.14, sec.4.03; Ex.15, Art.4.e (emphasis added).*

Plaintiffs also contend that the PLA requires "contractors to employ workers that are not the contractors' own employees." *Pl.Br. p.23*. Setting aside the self-contradictory nature of this sentence, Plaintiffs overlook that the CBA hiring procedures for a majority of the crafts do not require the contractor to hire from the Union at all.

6

*See, e.g. McConnell Aff., Exs.1-12.* Nor do the PLA or CBAs require that a contractor must "forsake" its regular employees when it hires from an exclusive hiring hall under the PLA as Plaintiffs assert. *See Pl.Br. p.1; PLA, Art.III, Sec.2; McConnell Aff., Exs.13-22.* Plaintiffs also contend that the PLA's hiring procedure "favors union members who are more likely to have experience under a union's collective bargaining agreement" and encourages employees to seek "seniority" under a CBA. *Pl.Br. pp.22-23.* However, the CBA hiring procedures incorporated in the PLA are non-discriminatory based on union membership and do not refer to "seniority," with the exception of the limited energy electrical CBA, which states: "***Seniority will not apply to any aspect of the referral, hiring, or separation process***." *McConnell Aff., Ex.15, Art.4.k (emphasis added) and Exs.1-22.*

Notably, Plaintiffs' "viewpoint discrimination" theory would call for invalidating the federal labor laws if taken to its logical conclusion. If being non-union were actually a "viewpoint," rather than a legal or contractual status, then under Plaintiffs' theory the constitutionality of the federal labor laws themselves would be called into question because those laws require unwilling non-union contractors to become union based on a majority vote of employees. *See* 29 U.S.C. §159. The requirement to become union would clearly impose a greater burden on Plaintiffs' purported "non-union viewpoint" and on the internal affairs of a "non-union" contractor than would a requirement to hire employees on a project using non-discriminatory CBA hiring procedures.

In summary, neither the PLA nor its hiring procedures discriminate on the basis of a "non-union viewpoint," as confirmed by the applicable case law, the PLA's plain

7

language, and the CBA hiring provisions incorporated in the PLA. Thus, Plaintiff's free speech claim must be dismissed.

## II. PLAINTIFFS FAIL TO STATE A FREEDOM OF ASSOCIATION CLAIM BECAUSE HIRING CONSTRUCTION WORKERS FOR A PROJECT IS NOT AN EXPRESSIVE ASSOCIATION, AND THE PLA DOES NOT IMPOSE ANY PENALTIES ON NON-UNION CONTRACTORS OR EMPLOYEES

The case law cited by Plaintiffs makes clear that a First Amendment claim of compelled association can only be brought if the plaintiff is engaged in an association for purposes of expressive activity—which hiring employees to work on construction projects plainly is not. *See Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000) ("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints."). In this case, the PLA does not force the ABC to include anyone in its group because the ABC does not hire construction workers and is not required to associate with anyone as a result of the PLA.

Moreover, Laketown's hiring of construction workers to work on a project cannot reasonably be understood as an expressive association. It is an economic activity rather than expressive in nature. Even assuming that Laketown is an association dedicated to anti-union advocacy in addition to being an electrical contractor—a fact that is neither plausible nor alleged in the Complaint—a School District's requirement of using collectively bargained hiring procedures on a project would not in any way impede Laketown's ability to criticize unions or even the PLA itself. Indeed, an employer's right to express its views about unions is protected by federal labor law. 29 U.S.C. §158(c). In

8

addition, contrary to Plaintiffs' protestations, "employers do not have a constitutional right to operate 'nonunion' shops or 'associate' only with unorganized employees. Federal labor law gives employees the right to organize and requires their employer to bargain collectively." *San Francisco Airports Com.*, 21 Cal.4th at 381, citing 29 U.S.C. §158(a)(5).

Plaintiffs fail to distinguish *Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*, 547 U.S. 47 (2006). In that case, law schools were required to "'associate' with military recruiters in the sense that they interact with them," but there was no compelled *expressive* association because the recruiters came onto campus for a "limited purpose," and "not to become members of the school's expressive association." *Id.* at 69. Similarly, in this case construction workers hired through union hiring procedures would be employed by Laketown for the "limited purpose" of performing electrical work for the School District and "not to become members of [the Employer's] expressive association" (assuming there is one). *Id.* at 69. Even if hiring construction workers were an expressive activity, it would not be reasonable to conclude that Laketown necessarily agrees with the union simply by obtaining referrals of employees under the PLA. *See, e.g., FAIR*, 547 U.S. at 65 ("Nothing about recruiting suggests that law schools agree with any speech by recruiters, and nothing in the Solomon Amendment restricts what the law schools may say about the military's policies.").

In addition, the PLA does not impose penalties or withhold benefits from non-union contractors or employees as explained in part I above. *See San Francisco Airports Com.*, 21 Cal.4th at 380 ("Nothing in the [PLA] stops ABC or its members from, or

9

punishes them for, engaging in whatever political action or advocacy they wish."). The Eighth Circuit's decision in *Hanten* clearly establishes that even an express "governmental preference for union labor" on a school district project has at most an incidental impact, not a "direct and substantial impact," on the freedom of association and is justified by a "legitimate and rational" public interest. 183 F.3d at 805-07; *accord Higgins Electric, Inc. v. O'Fallon Fire Protec. Dist.*, 813 F.3d 1124, 1130 (8th Cir. 2016) (reaffirming *Hanten* and rejecting a First Amendment challenge by a contractor to a government decision not to select the low bidder allegedly because the contractor was not signatory with an AFL-CIO Union). By analogy, in this case Plaintiffs have not provided a plausible account of how the requirement of abiding by the PLA or using its hiring procedures imposes a penalty or withholds a benefit based on non-union affiliation. Accordingly, Plaintiffs' freedom of association claim must be dismissed.

### III. PLAINTIFFS HAVE NO EQUAL PROTECTION CLAIM BECAUSE THE PLA DOES NOT DRAW A DISTINCTION BETWEEN UNION AND NON-UNION CONTRACTORS AND IS RATIONALLY RELATED TO LEGITIMATE GOVERNMENT INTERESTS UNDER SUPREME COURT AND EIGHTH CIRCUIT AUTHORITY

Plaintiffs' Equal Protection claim fails because the PLA does not, in fact, draw a distinction between union and non-union contractors or employees, as explained in part I above. Plaintiffs suggest that discovery is needed to determine whether the PLA actually is supported by a rational basis. However, the proper question is not whether the PLA actually accomplishes the stated objectives, only whether the School District rationally could have concluded that it does. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466 (1981). In this case, the School District rationally could have reached the

conclusion that the PLA accomplishes the stated objectives based on the case law from the U.S. Supreme Court, Eighth Circuit, and the District of Minnesota, and cases from other jurisdictions throughout the country, finding that PLAs are rationally related to the very same legitimate governmental interests as the School District has asserted here.  *See Defendant-Intervenor's Opening Brief, ECF Doc. No.32, pp.14-15,21-22*.  Accordingly, Plaintiffs' Equal Protection claim must be dismissed.

### IV. PLAINTIFFS HAVE NO DUE PROCESS CLAIM BECAUSE THEY FAIL TO ALLEGE A LIBERTY OR PROPERTY INTEREST

Plaintiffs attempt to save their due process claim by alleging that it is premised on substantive rather than procedural due process.  This distinction fails because under either theory Plaintiffs must allege a liberty or property interest.  *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445–46 (8th Cir. 1995) ("Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated.").  Plaintiffs have failed to allege a cognizable liberty or property interest for the reasons explained in Defendant-Intervenor's opening.  *ECF Doc. No.32, pp.22-24*.

In any event, a "substantive due process" claim presents a higher bar.  "[T]he theory of substantive due process is properly reserved for the truly egregious and extraordinary cases . . . ."  *Myers v. Scott Cnty.,* 868 F.2d 1017, 1018 (8th Cir.1989). "To prevail on a substantive due process claim, [Plaintiffs] ***must show 'a constitutionally protected property interest and that ... officials used their power in such an arbitrary and oppressive way that it 'shocks the conscience***.'" *Novotny v. Tripp Cnty., S.D.,* 664

11

F.3d 1173, 1178 (8th Cir. 2011) (quoting *Gallagher v. Magner,* 619 F.3d 840 (8th Cir.2010)) (emphasis added).   Here, Plaintiffs have shown no constitutionally protected liberty or property interest, nor can they show any government conduct that "shocks the conscience," so their Due Process claim must be dismissed.

**V.    PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO THE PLA'S FRINGE BENEFIT PROVISION MUST BE DISMISSED BECAUSE CONTRIBUTIONS TO EMPLOYEE BENEFITS SUCH AS PENSIONS AND HEALTH AND WELFARE DO NOT SUBSIDIZE UNION SPEECH**

Plaintiffs argue that the PLA's fringe benefit provision supposedly compels pro-union speech in violation of the First Amendment, relying on *Janus v. AFSCME Council 31*, 138 S.Ct. 2448, 2484 (2018).  In *Janus* the Court held that a requirement of paying dues to a public employee union violated the free speech rights of public employees by "compelling them to subsidize private speech [by the union] on matters of substantial public concern" with which they disagreed.  *Id*. at 2460.

In contrast, the PLA's fringe benefits provision does not compel any employer or employee to subsidize speech of any kind.  Instead, the PLA makes clear that employers are required to contribute only for "***such bona fide employee benefits as accrue to the direct benefit of the employee (such as pension and annuity, health and welfare, vacation, apprenticeship and training funds, etc.).***"  *PLA, Art.V, Sec.2. (emphasis added)*.  The fringe benefits contributions are made to jointly trusteed Taft-Hartley funds, not to any union.  *Compl., ¶¶98-99*.  Employer contributions would be unlawful if the benefit fund were not jointly trusteed and instead were controlled by a union.  *See* 29 U.S.C. §§186(c)(5),(6).

12

Moreover, the Employee Retirement Income Security Act ("ERISA") prohibits the fringe benefit funds referenced in the PLA from spending money on politics or "union speech." *See, e.g., NLRB v. Amax Coal*, 453 U.S. 322, 329-34 (1981). Under ERISA the trustees who act as plan fiduciaries of the benefit funds are required to spend the money solely for the benefit of the plan's beneficiaries, not for political advocacy for unions. *Id.*

Plaintiffs' argument that fringe benefit contributions to the Taft-Hartley funds supposedly "free up union money for other activities" makes no sense because Plaintiffs admit that employees "get those benefits on the contractor's dime." *Pl.Br. p.39*. It is illogical to assert that employer contributions for employee benefits that are exclusively funded by employers would somehow free up more union money for politics.

## VI. PLAINTIFFS LACK STANDING BECAUSE NON-UNION CONTRACTORS CAN AND DO COMPETE ON EQUAL FOOTING AS DEMONSTRATED BY THE NUMEROUS NON-UNION CONTRACTORS THAT HAVE WORKED UNDER THE PLA

The gravamen of Plaintiffs' position on standing is that they supposedly have suffered an injury-in-fact—even though neither Laketown nor other ABC members have submitted bids to work under the PLA—because they were "ready and willing" but could not have submitted bids on "equal footing." *Pl.Br. p.14*. This argument is faulty because, as explained in part I above, non-union contractors can bid on equal footing with union contractors under the PLA's plain language and the governing case law.

Defendant-Intervenor has submitted uncontested evidence that at least fifteen (15) non-union contractors have worked under the PLA in the past five (5) years, two of which were ABC members. *McConnell Aff., ¶5, Exs.24-25.* Plaintiffs cannot assert

13

standing where Laketown and other ABC contractors have chosen not to submit bids to work under the PLA despite being able to do so on an equal basis. *See Connecticut ABC v. City of Hartford*, 740 A.2d 813 (Conn. 1999) (holding that "nonbidding contractors and subcontractors" and the ABC lacked standing to challenge a PLA). Tellingly, the declaration of ABC member Merit Drywall, which worked under the PLA, does not claim that the hiring procedures or fringe benefits requirements were burdensome or that the company did not make money on the project, only that the Union tried to convince the contractor to become signatory—an action that can and does occur without a PLA and is protected by federal labor law. *See Declaration of Joyce Mehr; 29 U.S.C. §157.*

Plaintiffs cannot acquire standing by attempting to assert the claims of third-party employees because Plaintiffs have not suffered an injury-in-fact and thus do not have a "sufficiently concrete interest" at stake, nor is there a "hindrance" to employees' ability to protect their own interests. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). If employees had wanted to join this lawsuit, undoubtedly they would have done so.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety and with prejudice and award such other relief as may be just and equitable.

Dated: July 26, 2019    **CUMMINS & CUMMINS, LLP**

*/s/ Brendan D. Cummins*
Brendan D. Cummins, # 276236
1245 International Centre
920 Second Avenue South
Minneapolis, MN 55402
612.465.0108
brendan@cummins-law.com

**ATTORNEY FOR DEFENDANT-INTERVENOR MINNEAPOLIS BUILDING AND CONSTRUCTION TRADES COUNCIL**