## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Associated Builders and Contractors, Inc., Minnesota/North Dakota Chapter; and Laketown Electric Corp., | Civil No. 19-CV-00656 (DWF/BRT) |
| Plaintiffs, | |
| v. | |
| Minneapolis Public Schools, Special School District No. 1; and Nelson Inz, in his official capacity as Chairperson of the Minneapolis Board of Education, | **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| Defendants, | |
| and | |
| Minneapolis Building and Construction Trades Council, | |
| Defendant-Intervenor. | |

Plaintiffs' opposition memorandum makes repeated reference to various governmental entities' political decisions regarding the use of Project Labor Agreements. To be sure, Plaintiffs' contention that Defendants' use of a PLA "is an outlier in restricting competition" as "[o]ther school districts … do not operate under project labor agreements," misstates the use of such agreements in Minnesota. (ECF No. 44 at 4.) Notably, Minnesota statues expressly allow school districts to utilize PLAs in construction contracts. Minn. Stat. § 123B.52, subd. 1a. And numerous school districts throughout Minnesota do just that. For example, on May 7, 2018, the Anoka-Hennepin School Board voted to approve

1

the use of a PLA in a construction contract for two new elementary schools in Blaine and Ramsey, Minnesota.  On April 7, 2016, the Forest Lake School Board voted to authorize the use of a PLA in a construction contract for various facilities' improvements.  On September 25, 2018, the Roseville School Board voted to adopt a PLA in a construction contract for various facilities' improvements.  And on October 25, 2016, the Saint Paul School Board voted to accept a recommendation for the use of a PLA in construction contracts for improvements to eight schools, as well as the District Service Center.[1]  The fact is that PLAs are commonly used by Minnesota school districts to ensure that projects are completed in an expeditious and efficient manner.

Plaintiffs' memorandum makes clear that they wish Minnesota were one of the states that have made the political decision not to use PLAs.  And in the absence of such legislative activity, Plaintiffs ask the Court to enact their political goal by other means.  The trouble is, Plaintiffs do not have standing because they have failed to sufficiently allege an injury-in-fact.  And even if they did have standing, Plaintiffs' constitutional claims fail as a matter of law – which is why they have already been rejected by a wide variety of courts. This Court should therefore dismiss Plaintiffs' Complaint.

_____

[1] As matters of public record, the relevant school board minutes may be accessed online as follows:

   (a) http://anoka-k12.granicus.com/MinutesViewer.php?view_id=2&clip_id=472
   (b) https://www.flaschools.org/cms/lib/MN01909115/Centricity/Domain/276/BDM%20April%207%20%202016%201.pdf
   (c) https://www.isd623.org/sites/isd623.org/files/SBoard10-9-18pkt_combined.pdf
   (d) https://www.spps.org/site/handlers/filedownload.ashx?moduleinstanceid=90390&dataid=68728&FileName=102516.pdf

## ARGUMENT

## I.    PLAINTIFFS' OPPOSITION FAILS TO ESTABLISH A JUSTICIABLE CONTROVERSY.

### A.    Plaintiffs do not deny seeking an advisory opinion from the Court.

In moving to dismiss Plaintiffs' claims, MPS highlighted that Plaintiffs are improperly asking this Court to issue an advisory opinion.  (ECF No. 38 at *8-9.)  Plaintiffs failed to respond.  By doing so, Plaintiffs waived any opposition to this issue and the Court may grant MPS's motion to dismiss on this ground.  *See Richards v. State of Minn.*, Civ. No. 13-3029 (JRT/JSM), 2016 WL 818657 at *12 (D. Minn. Jan. 15, 2016) (a party's failure to oppose specific arguments in a motion to dismiss results in waiver of those issues); *Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 866 (D. Minn. 2015) (failure to respond to defendant's specific arguments in a motion to dismiss resulted in waiver of plaintiff's argument on that unaddressed point); *Salaimeh v. Messerli & Kramer, P.A.*, Civ. No. 13-3201 (DSD/HB), 2014 WL 6684970, at *2 n.2 (D. Minn. Nov. 25, 2014) (same); *Satcher v. University of Ark. at Pine Bluff Bd. Of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (noting that when "presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action" and concluding that "[t]he federal courts will not invent legal arguments for litigants").

Waiver aside, any opposition would have been futile because Plaintiffs are clearly seeking an impermissible advisory opinion.  At its core, Plaintiffs' Complaint is nothing

more than a hypothetical house of cards: *If* Plaintiffs submit a bid, they will be required to consent to the PLA; *If* they consent to the PLA, they will be required to contribute to an unspecified employee-benefit fund; *If* they contribute to the employee-benefit fund, their contributions may be used for political lobbying instead of for the benefit of their employees; *If* they consent to the PLA, they also will be required to hire from unspecified union halls; and *If* they are required to hire from union halls, they may be required to hire additional employees from union halls for the unspecified project.  Indeed, there appear to be more "ifs" than injuries specifically alleged in Plaintiffs' Complaint.  This is best exemplified by the fact that Plaintiffs failed to identify by name an actual bid, project, employee-benefit fund, misuse of employee-benefit funds, union hiring hall, or union hiring hall employees implicated in their supposed injury.

Plaintiffs have presented nothing more than the exact abstract questions that Article III was intended to safeguard against.  *See Cass Cty. v. United States*, 570 F.2d 737, 741 (8th Cir. 1978)  (Article III "recognizes the risk that comes from passing on abstract questions rather than limiting decisions to concrete cases in which a question is precisely framed by a clash of genuine adversary argument exploring every aspect of the issue") (quotations omitted).  The Court should decline Plaintiffs' invitation to issue an advisory opinion and dismiss their Complaint instead.  *See, e.g., id.* at 740 (observing that "federal courts will not render advisory opinions even in actions seeking declaratory judgments").

### B.    Plaintiffs have not properly alleged an injury-in-fact.

Even if Plaintiffs were not improperly seeking an advisory opinion, their Complaint still fails to present a justiciable controversy because they fail to sufficiently plead an

injury-in-fact.  In their opposition, Plaintiffs advance two arguments to try and establish an injury-in-fact: (1) the PLAs have caused Laketown to "miss out on profits"; and (2) there is a substantial likelihood that PLAs will be enforced in future projects.  Both arguments fail.[2]

### 1.    Plaintiffs have not plead a cognizable claim for lost profits.

Plaintiffs first argue that Laketown has standing because it has alleged lost profits as a result of the PLAs, and that ABC has associational standing for the same reason.  But Plaintiffs have not made any such viable allegation.  Instead, Plaintiffs hang their hat on an allegation devoid of requisite detail: "By not being able to submit qualified bids on ongoing projects that have incorporated terms from the 2004 project labor agreement because they refuse to agree to those terms, Plaintiffs, their members, and their employees miss out of profits from those projects."  (*See* ECF No. 1 at § 84.)  Plaintiffs do not allege that their unspecified bid for an unspecified project would have been selected by MPS.  (*See id.*) They do not allege that they have profited from similar projects in the past.  (*See id.*)  They do not allege that they would have run the unspecified project profitably, as opposed to being plagued by cost overruns and delays.  (*See id.*)  Nor do they allege that they were relying on the unspecified project to optimize their business opportunities, as opposed to simply earning profits from other projects that do not utilize PLAs.  (*See id.*)

---

[2] Plaintiffs also suggest in passing that they have established standing because Plaintiff is directly injured because Laketown is required to "assent to unconstitutional terms before Laketown may submit a qualified bid for a project."  (ECF No. 44 at *15.)  They do not further expound upon this argument, likely because they acknowledge that it is too speculative to confer standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (an injury in fact "must be concrete, particularized, and actual or imminent").

As the Supreme Court has repeatedly held, an injury-in-fact must be more than a "generalized grievance." *United States v. Hays*, 515 U.S. 737, 743 (1995); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (plaintiff cannot establish standing through pleading a "speculative chain of possibilities"); *see also ARRM v. Piper*, 367 F. Supp. 3d 944, 951 (D. Minn. 2019) ("Allegations of a possible future injury are insufficient to confer standing."). And while the Eighth Circuit has yet to weigh in on the issue, other circuits have applied this maxim in the context of lost profits. *E.g., Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1336–37 (11th Cir. 2019) (affirming district court's dismissal on the ground that bare assertion of lost profits could not establish an injury-in-fact); *ViroPharma Inc. v. Hamburg*, 471 F. App'x 1, 1-2 (D.C. Cir. 2012) (affirming district court's dismissal of complaint because allegations of lost-profits were too speculative to confer standing); *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 24 (2d Cir. 1990) (holding that plaintiff's allegations of lost commissions were "too speculative to confer standing, because [he] only alleges that he would have lost commissions in the future, and not that he has lost any yet"); *see also Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC*, No. 17-CV-5376 (PKC), 2018 WL 3650135, at *2 (S.D.N.Y. July 31, 2018) (lost-profits allegation was plead as a "hypothetical future harm" insufficient to confer standing), *aff'd*, 756 F. App'x 71 (2d Cir. 2019). Because Plaintiffs have failed to cognizably plead a plausible claim for lost profits, this bare-bones allegation is insufficient to confer standing on Laketown and ABC by association.

6

### 2. Plaintiffs' reliance on the substantial-likelihood doctrine is misplaced.

Plaintiffs also argue that they should be excused from actually submitting a bid and alleging an injury-in-fact because there is a substantial likelihood that PLAs will be enforced in the future. (*See* ECF No. 44 at *15-16.) This argument misapprehends the substantial-likelihood doctrine. In a standing analysis, a court considers whether there is a "'substantial likelihood' that the requested relief <u>will remedy the alleged injury in fact</u>." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis added). This inquiry is an issue of redressability—not a substitute for an injury-in-fact. *See id.*

Plaintiff relies on three inapposite cases to prop-up their substantial-likelihood theory. *Wooley v. Maynard* is a criminal case in which the Supreme Court reiterated the narrow holding that "when a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal right." *Wooley v. Maynard*, 430 U.S. 705, 710 (1977). Here, there is no imminent threat of criminal prosecution, so the Supreme Court's holding is inapplicable.

Similarly, Plaintiffs reliance on *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida* is also unconvincing. There, the Supreme Court analyzed a "set-aside" ordinance whereby the City of Jacksonville earmarked 10% of all city contracts to be awarded to minority-owned businesses. 508 U.S. 656, 658–59 (1993). The ordinance was challenged by an association of contractors who did not meet the definition of a minority-owned business under the

ordinance. *Id.* at 659. The Supreme Court concluded that "in the context of a challenge to a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.* at 666. This case is distinguishable for two reasons. First, Plaintiffs are not challenging a set-aside program on equal-protection grounds, as was the case in *Northeastern Florida*. Second, and more importantly, Plaintiffs have not alleged that they are on unequal footing in the bidding process. (*See, generally,* ECF No. 1.) To the contrary, as the Union points out, non-union contractors—including two ABC members—can and do bid on equal footing with union contractors under the plain language of the PLA. Plaintiffs' emphasis on *Northeastern Florida* rings hollow.

So, too, does Plaintiffs' citation to the Ninth Circuit's decision in *Associated General Contractors of America v. Metropolitan Water District of Southern California*. That case involved a specific project in question: the Eastside Reservoir Project, a $2 billion water storage facility. *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1180 (9th Cir. 1998). The government corporation overseeing the project implemented PLAs that required contractors and subcontractors to contribute to designated employee-benefit funds. *Id.* A group of contractors challenged the imposition of the PLAs and the designated employee-benefit funds as preempted by ERISA. *Id.* The Ninth Circuit determined that the contractors established standing, noting that "This is not a case where there is a claim that some member might hypothetically be affected some day, but 'without any description of concrete plans' or 'any specification of when the some day will be.' *Id.* at 1181 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)). Instead, the Ninth Circuit highlighted three key facts alleged: the

presence of an actual project at issue; the fact that one association member actually performed work on the project and was required to follow the terms of the PLA; and the fact that another association member would submit a bid to work on the project in question but for the PLA requirement. *Id.*

Ironically, the Ninth Circuit's decision highlights the exact shortcomings Plaintiffs suffer from in this case. There is no allegation of a specific project in controversy. There is no allegation that a specific contractor has been forced to follow the terms of the PLA on a specific project in controversy. And there is no allegation that a specific contractor has been deterred from bidding on a specific project in controversy because of concern for the PLA. Without these requisite allegations, Plaintiffs allege nothing more than "a case where there is a claim that some member might hypothetically be affected some day, but without any description of concrete plans or any specification of when the some day will be," which is the exact focus of the Ninth Circuit's concerns.[3]

Because Plaintiffs have failed to demonstrate an appreciable injury-in-fact on their pleadings, the Court should dismiss their Complaint for this second, independent reason.

---

[3] Notably, the Ninth Circuit dismissed the claim on its merits after determining that standing was met. *Associated Gen. Contractors of Am.*, 159 F.3d at 1182–85.

## II.    PLAINTIFFS' CLAIMS RELATING TO THE PLA'S HIRING PROVISION FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.

### A.    The PLA's Hiring Provision Does Not Violate the First Amendment.

#### 1.    Freedom of Speech

"The First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Matal v. Tam*, 137 S.Ct. 1744, 1757 (2017).  A state engages in viewpoint discrimination when the rationale for its regulation of speech is "the specific motivating ideology or the opinion or perspective of the speaker." *Gerlich v. Leath*, 861 F.3d 697, 705 (8th Cir. 2017).  Plaintiffs argue that the PLA's hiring provision "violates the Free Speech Clause of the First Amendment because it favors union viewpoints." (Docket No. 44, p. 20.)  However, the only connections that Plaintiffs make between the PLA's hiring provision and any alleged viewpoint discrimination are broad, unsupported allegations that "[l]abor unions often engage in political activities and are often associated with particular viewpoints" and "[u]nion hiring halls encourage union membership." (Docket No. 1, pp. 8–9, ¶¶ 42, 48.)  However, Plaintiffs fail to articulate, in nonconclusory terms, *how* the PLA's hiring provision regulates speech in any manner, let alone how it favors union viewpoints.

Plaintiff's sole argument is that the PLA's hiring provision discriminates against non-union contractors because it forces them to agree to hire their employees from union hiring halls.  (Docket No. 44, p. 22.)  Such a simple statement misrepresents the actual terms of the PLA.  The PLA provides that hiring is governed by procedures contained within the collective bargaining agreements of various unions.  (Docket No. 1-1, p. 38.)  A

10

majority of these procedures allow an employer to hire its employees from <u>any</u> source. (*See* Docket Nos. 33-2, 33-3, 33-4, 33-5, 33-6, 33-7, 33-8, 33-9, 33-10, 33-11, 33-12, and 33-13.)  The procedures that do establish "exclusive hiring halls" prohibit discrimination on the basis of union membership.  (*See* Docket Nos. 33-14, 33-15, 33-16, 33-17, 33-18, 33-19, 33-20, 33-21, 33-22, and 33-23.)

Importantly, "[w]here an exhibit and the complaint conflict, the exhibit typically controls."  *Forrest v. Univ. Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).  As such, when considering this motion, the Court should disregard Plaintiffs' allegations that the PLA mandates employers obtain their employees from hiring halls, (Docket No. 1, p. 9, ¶ 49), and that the PLA allows unions to give preference for workers who have gained experience through the union, (*Id.* at p. 10, ¶ 51), as such allegations are inconsistent with the hiring procedures themselves.

Additionally, Plaintiffs' discussion of political patronage viewpoint discrimination misses the mark.  This is not a situation in which Defendants have made "public employment subject to the express condition of political beliefs or prescribed expression." *See O'Hare Truck Serv., Inc. v. City of Northlake*, 116 S.Ct. 2353, 2357 (1996).  To the contrary, not only does the PLA apply to private (not public) employment, the PLA does not condition acceptance of a bid on a contractor's union or non-union status, nor does it require that any of a contractor's employee be union-affiliated.  As the PLA does not favor any specific viewpoint on its own clear terms, Plaintiffs' Free Speech claim fails to state a claim on which relief may be granted and must be dismissed.

## 2.      Freedom of Association

"There is no doubt that 'the freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments . . . However, not every governmental practice that might conceivably impose upon a citizen's freedom to associate is actionable." *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). Specifically, a governmental preference for union labor in the construction industry does not directly or substantially interfere with the rights of laborers to refrain from joining a union. *Id.* at 806.

Plaintiffs attempt to distract from the Eighth Circuit's holding in *Hanten* by arguing that "Laketown alleges that it suffers lost profits reaching upwards of millions of dollars because it refuses to agree to PLA terms that it believes are unconstitutional [] and would incur additional costs if it were to agree to those terms." (ECF No. 44 at 32.) Plaintiffs go on to argue that lost profits incidentally result in wage losses. (*Id.*) However, this is not what Plaintiffs pled in their Complaint. Plaintiffs alleged merely:

- "The union hiring provision directly and substantially interferes with the ability of Plaintiffs and Plaintiffs' employees to freely associate" (Docket No. 1, p. 15, ¶ 83);

- "Plaintiffs, their members, and their employees miss out on profits from [ongoing] projects" (*Id.* at p. 15, ¶ 84); and

- "Plaintiffs and their employees will incur additional costs if they agree to the project labor agreement." (*Id.* at p. 15, ¶ 85.)

Like in *Hanten*, Plaintiffs have not alleged in their Complaint, in nonconclusory terms, that the PLA's hiring provision directly or substantially interfered with their rights. *See Hanten*, 183 F.3d at 806. Plaintiffs do not claim that the PLA's hiring provision is likely to coerce their employees to join a union. *See id.* Plaintiffs do not claim that there is a shortage of work. *See id.* Plaintiffs do not claim that their employees have actually lost wages or are likely to suffer wage losses as a result of the PLA hiring provision. *See id.* Plaintiffs do not claim that the PLA's hiring provision is causing, or will cause, its employees to quit working for them. *See id.* Plaintiffs make no assertion that their employees would do anything as a result of the PLA's hiring provision that they would not have done absent the provision. *See id.* As such, like the Court in *Hanten*, this Court should find that it is "exceedingly unlikely" that the PLA's hiring provision prevents Plaintiffs from exercising their rights to freely associate, as "a governmental preference for union labor in the construction industry does not 'directly or substantially interfere' with the rights of laborers to refrain from joining a union." *Hanten*, 183 F.3d at 806.

Plaintiffs argue that their rights to freely associate have been infringed as the PLA's hiring provision interferes with the internal organization or affairs of Minnesota ABC and Laketown because "the forced inclusion of unknown workers from the hiring hall would significantly affect Plaintiffs' ability to advocate for their viewpoints." (Docket No. 44, pp. 28–30.)[4] The only support provided for such an assertion is Plaintiffs' conclusory, and speculative, assertion that obtaining employees from hiring halls would "invite cynicism

_____

[4] Notably, Plaintiffs did not plead this in their Complaint. As such, these allegations should be disregarded outright.

concerning Laketown's merit-shop philosophy." (*Id.* at p. 29.) As "[f]actual allegations must be enough to raise a right to relief above the speculative level," Plaintiffs' unpled assertion fails. *See Bell Atl. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

Needless to say, even if Plaintiffs had provided support for their assertion, their claim still fails. Minnesota ABC cannot credibly claim, and has not claimed, that it has been forced to accept members that it does not desire into its ranks. Further, any such claim made by Laketown is disingenuous. The hiring procedures that would govern Laketown, were they to bid a project, clearly state: "The Employer shall have the right to reject any applicant for employment." (ECF Nos. 33-15 at 3 and 33-16 at 2.) This fact is fatal to Laketown's claim. As Plaintiffs cannot state a claim, and have not properly pled a claim, for infringement of their rights to associate by interfering with their internal organizations or affairs, Plaintiff's Freedom of Association claim should be dismissed.

Plaintiff is not saved by its inaccurate assertion that "Defendants have not explained how a union hiring hall furthers a legitimate government interest." (Docket No. 44, p. 32.) First, the PLA does not mandate the use of hiring halls, it mandates compliance with hiring procedures contained within the collective bargaining agreements of various unions. Second, the PLA itself explains the purpose of its hiring provision:

> It is in the public interest that the Project progress be completed in an expeditious and efficient manner, free of the disruption or delay of any kind. Therefore, it is essential to secure optimum productivity and to eliminate any delays in the work. In recognition of the special needs of this Project and to maintain a spirit of harmony, labor management peace and stability during the terms of this Project Labor Agreement, the parties agree to establish effective and binding methods for the settlement of all misunderstandings, disputes or grievances which may arise. Therefore, the Unions agree not to

14

engage in any strike, slowdown or interruption of work and the Contractor agrees not to engage in any lockout.

The Contractor(s) and the Unions agree that the timely construction of this Project will require substantial numbers of employees from construction and supporting crafts, possessing skills and qualifications that are vital to its completion.    They will work together to furnish skilled, efficient craftworkers for the construction of the Project.

Further, the parties desire to mutually establish and stabilize wages, hours and working conditions for the craftworkers on this construction Project to encourage close cooperation and that a harmonious relationship will exist between the parties to this Agreement.

(ECF No. 1-1 at 35–36.)   As the Eighth Circuit has found such interests to be both legitimate and rational in *Hanten*, Plaintiffs' Freedom of Association claim should be dismissed.

### B.    The PLA's Hiring Provision Does Not Violate the Equal Protection Clause.

Plaintiffs allege that the PLA's hiring provision violates the Equal Protection Clause because it "discriminate[s] against non-union parties without any relation to any legitimate government state interest."   (ECF No. 44 at 33 (citing ECF No. 1, at 15–16, ¶¶ 87–91).) Initially, Plaintiffs alleged that rational basis review applied to its Equal Protection claim. (*See* ECF No. 1 at 16, ¶¶ 88–89.)   Now, Plaintiffs allege that strict scrutiny applies to its Equal Protection claim.   (ECF No. 44 at 33 n. 15.)   Regardless of Plaintiffs' inconsistent positions, the "Supreme Court has however long held that a classification that does not involve fundamental rights or suspect classes does not violate the equal protection clause 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"   *Holt v. Howard*, 806 F.3d 1129, 1132 (8th Cir. 2015) (quoting

*Heller v. Doe*, 509 U.S. 312, 319–20 (1993)).  Union membership is not a suspect class.  *City of Charlotte v. Local 660, Intern. Ass'n of Firefighters*, 96 S.Ct. 2036, 2038–40 (1976).  Further, as the PLA does not discriminate on the basis of viewpoint, no fundamental right is at issue here.  Therefore, rational basis review applies to Plaintiffs' Equal Protection claim.

While Plaintiffs cite a number of cases outside this jurisdiction in alleging that courts cannot determine reasonableness or rationality at the motion to dismiss stage, Plaintiffs completely disregard binding case law in this jurisdiction that says otherwise.  In *Hanten*, at the motion to dismiss stage, the Eighth Circuit expressly held that:

> [W]hen the government, acting like a private business, states a preference for union labor in construction bid specifications, such a preference is facially rational.  The preference for union labor at a construction project is based upon the desire to avoid expensive and time consuming workplace disruptions, <u>and that purpose is clearly legitimate, as well as rational.</u>

*Hanten*, 183 F.3d at 806.

Hoping to overcome this precedent, Plaintiffs allege that the PLA's hiring provision is irrational for two reasons: (1) "[c]ontractors [and their employees] are not better equipped to work on construction projects merely by virtue of being a union contractor" or "coming from a union hiring hall" (ECF No. 1 at 16, ¶¶ 90–91); and (2) "[a]ny interest in preventing work stoppages and ensuring the timely completion of projects could be satisfied with contractual provisions between a contractor and the Minneapolis Public School District."  (ECF No. 1 at 17, ¶ 96.)  However, "the tenant that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1940 (2009).  As such, Plaintiffs conclusory allegations – irrelevant to this analysis as they may be – should not be regarded as true when deciding this motion.

Additionally, Plaintiffs allege that they "should be afforded the opportunity to rebut [assertions of rationality] through discovery, so they may prove that the Union Hiring Provision is not related to the government's stated purposes, or any other legitimate state interest."  (ECF No. 44 at 35.)  Regardless of what Plaintiffs believe they will unearth during discovery, as a matter of law "the governmental preference for union labor in construction bid specifications . . . is legitimate and rational because it seeks workplace harmony at a construction site where cooperation can be especially critical to the prompt and economical completion of public works."  *Hanten*, 183 F.3d at 807.  It matters not that Plaintiffs disagree with established Eighth Circuit law.  As Plaintiffs have provided no binding case law to contradict the Eighth Circuit's clear precedent, Plaintiffs' Equal Protection claim must be dismissed.

### C.    The PLA's Hiring Provision Does Not Violate the Due Process Clause.

In bringing their Due Process claim, Plaintiffs alleged that the "Due Process Clause protects individuals from arbitrary restrictions on their right to earn a living", citing *Bd. of Regents v. Roth*, 92 S.Ct. 2701 (1972).  (ECF No. 1 at 16, ¶ 93.)  In *Roth*, the United States Supreme Court was tasked with determining whether an individual's <u>procedural</u> due process rights were violated.  92 S.Ct. 2701, 2705–10 (1972).  After pleading only a procedural due process claim, Plaintiffs claim that Defendants have "misapprehend[ed] Plaintiffs' claim" alleging that they have brought a substantive due process challenge to the PLA's hiring provision.  (ECF No. 44 at 37.)

17

However, under either a substantive or procedural due process claim Plaintiffs must allege a property or liberty interest at stake. *Novotny v. Tripp Cnty., S.D.*, 664 F.3d 1173, 1178 (8th Cir. 2011); *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445–46 (8th Cir. 1995). As Plaintiffs do not even attempt to address the clear law showing that Plaintiffs cannot establish that they had a property or liberty interest at stake, (*see* Docket No. 38, pp. 11–12), the Court should dismiss Plaintiff's Due Process claim.[5]

## III. THE PLA'S FRINGE BENEFITS PROVISION DOES NOT VIOLATE THE FIRST AMENDMENT.

In determining whether Plaintiffs state a claim that the PLA's fringe benefits provision violates the First Amendment, it is important to look at the facts Plaintiffs allege in their Complaint. First, Plaintiffs allege that the PLA's fringe benefits provision requires contractors to contribute to employee benefit funds jointly established and administered by the signatory union and employers. (ECF No. 1 at 17, ¶ 98.) Then, Plaintiffs allege that contributions to employee benefit funds allow the union to use more money on other activities – activities that *may* benefit the union and its members. (*Id.* at p. 17, ¶ 99.) Going further, Plaintiffs allege that the contributions to employee benefit funds "fund political advocacy and lobbying directed at the government" and "fund union speech." (*Id.* at pp. 17–18, ¶¶ 100, 102.) Generally, on a motion to dismiss, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff.

---

[5] Even if the Court were to find that Plaintiffs pled a substantive due process claim, such a claim fails because, as a matter of law, "the governmental preference for union labor in construction bid specifications . . . is legitimate and rational." *Hanten*, 183 F.3d at 807.

*Hanten*, 183 F.3d at 805.  However, "[w]here an exhibit and the complaint conflict, the exhibit typically controls.  A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Forrest*, 507 F.3d at 542.

> The PLA clearly states:
>
> The Contractors agree to pay contributions to the established employee's benefit funds in the amounts designated in the appropriate Schedule A; provided however, that the Contractors and the Union agree that <u>only such bona fide employee benefits as accrue to the direct benefit of the employee</u> (such as pension and annuity, health and welfare, vacation, apprenticeship and training funds, etc.) shall be included in this requirement and paid by the Contractors on the Project.

(Docket No. 1-1, p. 39 (emphasis added).)  The PLA, which Plaintiff attached to their Complaint, clearly establishes that contributions made to employee benefit funds <u>do not</u> "fund political advocacy and lobbying directed at the government" or "fund union speech" as Plaintiff alleges.

As Plaintiff's allegations are directly contradicted by the PLA itself, the only remaining allegations that the Court should consider in deciding this motion to dismiss relate to whether it is a First Amendment violation to require contractors to contribute to an employee benefit fund that *may* benefit a union.  (*See* ECF No. 1 at 17, ¶ 99.)  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Plaintiffs speculative allegations do not rise to the level of a cognizable claim and should, therefore, be dismissed.

Plaintiffs' reliance on *Janus v. Am. Fed'n of State, Cty., and Mun. Emps. Council*, 138 S.Ct. 2448 (2018) cannot save them.  As Plaintiffs highlight, in *Janus*, non-union members were required "to pay for various union expenses such as lobbying, advertising, membership meetings and conventions, litigation, and other unspecified services that 'may ultimately inure to the benefit of the members of the local bargaining unit.'"  (Docket No. 44, pp. 38–39 (quoting *Janus*, 138 S.Ct. at 2461).)  Here, the PLA's fringe benefits provision does not require contributions that fund "various union expenses such as lobbying, advertising, membership meetings and conventions, litigation, [or] other unspecified services that may ultimately inure to the benefit" of the union.  In fact, the terms of the PLA expressly require the employee benefit funds inure directly to the benefit of the employee, (ECF No. 1-1 at 39), making *Janus* inapposite.

## CONCLUSION

For all of the reasons set forth by Defendants, the Court should dismiss the Complaint in its entirety and with prejudice.

**BASSFORD REMELE**
*A Professional Association*

Dated: July 26, 2019

By: *s/Jonathan P. Norrie*
Jonathan P. Norrie (MN #347309)
J. Scott Andresen (MN #292953)
Daniel R. Olson (MN #389235)
Jessica L. Kometz (MN #399303)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
jnorrie@bassford.com
sandresen@bassford.com
dolson@bassford.com
jkometz@bassford.com

*Attorneys for Minneapolis Public Schools and*
*Nelson Inz as Board Chair*